IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------- x
In re:                                                     :   Chapter 11
                                                           :
NATIONAL DRY CLEANERS INC.                                 :   Case No. 08-11382 (CSS)
a Delaware corporation, et al.,                            :
                                                           :   Jointly Administered
         Debtors.                                          :
                                                           :
                                                           :   Ref. Docket No. 108
                                                           :
---------------------------------------------------------- x

**ORDER (I)(1) APPROVING SALE PROCEDURES IN CONNECTION WITH SALE OF ASSETS IDENTIFIED IN THE ASSET PURCHASE AGREEMENT WITH REY'S CENTRAL DRYCLEANING, INC., (2) APPROVING SALE PROCEDURES IN CONNECTION WITH SALE OF NON-STALKING HORSE ASSETS; (II) SCHEDULING A HEARING TO CONSIDER SALE OF ASSETS; (III) APPROVING THE FORM AND MANNER OF NOTICE THEREOF, (IV) APPROVING A BREAK-UP FEE TO REY'S CENTRAL DRYCLEANING, INC., AND (V) GRANTING RELATED RELIEF**

Upon consideration of the motion (the "Motion")[1] of DCI Management Group, Inc. (the "Debtor" or "DCI Florida"), one of the debtors and debtors in possession in the above cases (collectively, the "Debtors"),[2] pursuant to sections 105(a), 363, 365, 503 and 507 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for entry orders substantially in the forms annexed to the Motion as Exhibit A and Exhibit C, approving sale procedures and the sale of the Stalking Horse Assets and the Non-Stalking Horse Assets of DCI Florida in the Miami Region; and the Court having determined that the relief provided herein is in the best interest of the Debtors, their estates, their creditors and other parties in interest; and due and adequate notice of the Motion having been given under the circumstances; and upon the record

---

[1] Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Motion.
[2] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: National Dry Cleaners Inc. (6722), DCI USA, Inc. (3731), DCI Management Group, Ltd. (a California corporation) (2299), DCI Management Group, Ltd. (an Arizona corporation) (7724), Al Phillips The Cleaner, Inc. (0976), Capitol Varsity, Inc. (9357), DryClean USA of South Carolina, Inc. (3822), DryClean U.S.A. Coastal, Inc. (3612), DryClean

of the hearing on the Motion, and the full record of these cases; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

**FOUND AND DETERMINED THAT:**

A. The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

B. This Court has jurisdiction over the Motion and the transactions contemplated by the Rey's Agreement and/or the Miami Sale Agreement(s) pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M) and (O). Venue in this district is proper under 28 U.S.C. §§ 1408 and 1409.

C. Good and sufficient notice of the Motion and the relief sought therein has been given under the circumstances, and no other or further notice is required except as set forth herein with respect to the Sale Hearing. A reasonable opportunity to object or be heard regarding the relief provided herein has been afforded to parties in interest.

D. The Debtor's proposed notice of the Stalking Horse Sale Procedures and the Non-Stalking Horse Sale Procedures is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Stalking Horse Auction (as defined in the Stalking Horse Sale Procedures), the Non-Stalking Horse Auction (as defined in the Non-Stalking Horse Sale Procedures), the sale of the Stalking Horse Assets and the Non-Stalking Horse Assets, and the Stalking Horse Sale Procedures and Non-Stalking Horse Sale Procedures to be employed in connection therewith.

---

USA of Georgia, Inc. (1817), Tuchman Cleaners, Inc. (5121), DCI Management Group, Inc. (0277), and Pride Cleaners, Inc. (9852). The address for the Debtors is 11811 N. Tatum Blvd., #3031, Phoenix, Arizona 85028.

E. The entry of this Miami Sale Procedures Order is in the best interests of the Debtors, their estates, their creditors, and other parties-in-interest.

F. The Stalking Horse Sale Procedures are reasonably designed to maximize the value to be achieved for the Stalking Horse Assets. The Non-Stalking Horse Sale Procedures are reasonably designed to maximize the value to be achieved for the Non-Stalking Horse Assets.

G. The Debtor has demonstrated that the Break-Up Fee is an actual and necessary cost and expense of preserving the Debtors' estates, within the meaning of section 503(b) of the Bankruptcy Code, and of substantial benefit to the Debtors' estates because it has induced the Buyer's bid, which has established a bid standard or minimum for other bidders for the Stalking Horse Assets, thereby ensuring that during the Stalking Horse Auction, if any, the Debtor receives the highest or best bid possible for the Stalking Horse Assets.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1. The Motion is granted.

2. All objections to the Motion or the relief provided herein that have not been withdrawn, waived or settled, and all reservations of rights included therein, hereby are overruled and denied on the merits.

3. The Stalking Horse Sale Procedures, in substantially the form attached hereto as Exhibit 1, are hereby incorporated herein and approved, and shall apply with respect to the sale of the Stalking Horse Assets.

4. The Non-Stalking Horse Sale Procedures, in substantially the form attached hereto as Exhibit 2, are hereby incorporated herein and approved, and shall apply with respect to the sale of the Non-Stalking Horse Assets.

3

5. To the extent a party wishes to submit a bid solely on some or all of Non-Stalking Horse Assets (i.e., those assets not included in the Rey's Agreement), such bids are required to be made pursuant to the terms of the Non-Stalking Horse Sale Procedures. To extent a party submits a bid that includes any Stalking Horse Asset, such bid shall be subject to the Stalking Horse Sale Procedures.

6. The Debtor may sell the Stalking Horse Assets and the Non-Stalking Horse Assets by conducting an auction in accordance with the Stalking Horse Sale Procedures and the Non-Stalking Horse Sale Procedures, respectively.

7. The Stalking Horse Auction and the Non-Stalking Horse Auction shall take place on September 9, 2008 at 10:00 a.m. (prevailing Eastern Time) at the offices of Young Conaway Stargatt & Taylor, LLP, 1000 West Street, 17th Floor, Wilmington, Delaware 19801, or such other place and time as the Debtors shall notify all Qualified Bidders, the Official Committee of Unsecured Creditors (the "Committee"), counsel for Prudential and other invitees.

8. The Sale Hearing shall be held before this Court on September 19, 2008 at 10:00 a.m.(prevailing Eastern Time), or as soon thereafter as counsel and interested parties may be heard.

9. On or before three (3) business days after entry of this Miami Sale Procedures Order, the Debtor will cause the notice, substantially in the form attached hereto as Exhibit 3 (the "Notice"), the Rey's Agreement and the Miami Sale Procedures Order to be sent by first-class mail postage prepaid, to the following: (i) the Office of the United States Trustee; (ii) counsel for the Buyer; (iii) counsel for Prudential; (iv) counsel for Committee; (v) all entities known to have expressed a bona fide interest, within the last six months, in acquiring the Stalking Horse Assets and Non-Stalking Horse Assets; (vi) all entities (or counsel therefor)

known to have asserted any lien, claim, encumbrance, right of refusal, or other interest in or upon the Stalking Horse Assets and the Non-Stalking Horse Assets; (vii) federal, state, and local regulatory or taxing authorities or recording offices or any other governmental authorities that, as a result of the sale of the Stalking Horse Assets or the Non-Stalking Horse Assets, may have claims, contingent or otherwise, in connection with the Debtor's ownership of the Stalking Horse Assets or the Non-Stalking Horse Assts or have any reasonably known interest in the relief requested by the Motion; (viii) all parties, if any, who are known to claim interests in any Executory Contracts and Leases related to the Miami Region; (ix) the United States Attorney's office; (x) the Internal Revenue Service; and (xi) all parties who have requested notice pursuant to Bankruptcy Rule 2002 as of the date of the entry of the Miami Sale Procedures Order. In addition to the foregoing, on or before three (3) business days after entry of this Miami Sale Procedures Order, the Debtors will serve the Notice on all known creditors of DCI Florida.

10. On or before three (3) business days after the entry of the Miami Sale Procedures Order by first class mail or hand delivery, the Debtor shall serve a notice of potential assumption and assignment of the Executory Contracts and Leases (the "Assumption Notice") on all non-debtor parties to the Executory Contracts and Leases. The Assumption Notice shall identify whether the Executory Contract and Lease is a Stalking Horse Asset or Non-Stalking Horse Assets and the calculation of the undisputed cure amounts that the Debtor believes must be paid to cure all defaults under the Executory Contracts and Leases (the "Cure Amounts").

11. Objections (each a "Cure Amount Objection") to the scheduled Cure Amounts with respect to the Executory Contracts and Leases, regardless of whether they are Stalking Horse Assets or Non-Stalking Horse Assets, shall be filed on or before September 2, 2008 at 4:00 p.m. (the "Cure Objection Deadline").

12. Objections based on adequate assurance of future performance with respect to the Buyer shall be filed on or before the Cure Objection Deadline.

13. Objections (each an "Adequate Assurance Objection") based solely on the issue of adequate assurance of future performance with respect to Executory Contracts and Leases that are identified as Non-Stalking Horse Assets shall be filed on or before September 16, 2008 at 4:00 p.m. (the "Adequate Assurance Objection Deadline").

14. Objections based solely on the issue of adequate assurance of future performance in the event the Buyer is not the Successful Bidder for the Stalking Horse Assets shall be filed on or before the Adequate Assurance Objection Deadline.

15. In the event that the Buyer is not the Successful Bidder for the Stalking Horse Assets and for those Executory Contracts and Leases identified in the Assumption Notice as Non-Stalking Horse Assets that are included in a Successful Bid, within one (1) business day after the conclusion of the auctions for the Stalking Horse Assets and the Non-Stalking Horse Assets, the Debtor shall serve a notice identifying the Successful Bidders by overnight courier or facsimile to the non-Debtor parties to the Executory Contracts and Leases that have been identified in such Successful Bid.

16. Unless the non-debtor party to an Executory Contract or Lease files (i) a Cure Amount Objection on or before the Cure Objection Deadline and/or (ii) an Adequate Assurance Objection on or before the Adequate Assurance Objection Deadline, and serves a copy of the Cure Amount Objection or the Adequate Assurance Objection, as applicable, so as to be received no later than the Cure Objection Deadline or the Adequate Assurance Objection Deadline, as applicable, on the same day to: (a) National Dry Cleaners Inc., 6970 W. 152nd Terrace, Overland Park, Kansas 66223 (Attn: Kevin M. Lyng, Chief Executive Officer); (b)

6

Young Conaway Stargatt & Taylor, LLP, 1000 West Street, 17th Floor, P.O. Box 391, Wilmington, Delaware 19899-0391 (Attn: Joel A. Waite), counsel to the Debtors; (c) Benesch, Friedlander, Coplan & Aronoff, LLP, 222 Delaware Avenue, Suite 810, Wilmington, Delaware 19801 (Attn: Bradford Sandler), counsel to the Committee; (d) Alston & Bird LLP, One Atlantic Center, 1201 West Peachtree Street, Atlanta, Georgia 30309-3424 (Attn: Jason Watson), counsel to Prudential; (e) TurnPoint Advisors LLC, 6957 Delrose Drive, Dallas, Texas 75214 (Attn: Russell Lambert), advisor to the Buyer; and (f) the Office of the United States Trustee, 844 King Street, Room 2313, Wilmington, Delaware 19801 (Attn: David Buchbinder) (collectively, the "Notice Parties"); such non-debtor party should (i) be forever barred from objecting to the Cure Amount and from asserting any additional cure or other amounts with respect to such Executory Contract and Lease and the Debtor shall be entitled to rely solely upon the Cure Amount; and (ii) be deemed to have consented to the assumption and assignment of such Executory Contract and Lease and shall be forever barred and estopped from asserting or claiming against the Debtors, the Buyer or such other successful bidder or any other assignee of the relevant Executory Contract and Lease that any additional amounts are due or defaults exist, or conditions to assumption and assignment must be satisfied under such Executory Contract.

17. Objections, if any, to the sale of the Stalking Horse Assets, the Non-Stalking Horse Assets, or the relief requested in the Motion must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Bankruptcy Rules; (c) be filed with the clerk of the Bankruptcy Court for the District of Delaware, Third Floor, 824 Market Street, Wilmington, Delaware 19801, on or before 4:00 p.m. (prevailing Eastern Time) on September 4, 2008, or such later date and time as the Debtor may agree; and (d) be served so as to be received no later than 4:00 p.m. (prevailing Eastern Time) on the same day, upon the Notice Parties

18. The Notice to be issued in connection with the proposed sales of the Stalking Horse Assets and the Non-Stalking Horse Assets, substantially in the form annexed hereto as <u>Exhibit 3</u>, is approved.

19. The Sale Hearing may be adjourned, from time to time, without further notice to creditors or other parties in interest other than by announcement of said adjournment before this Court or on this Court's calendar on the date scheduled for said hearing.

20. The Break-Up Fee as set forth in the Rey's Agreement is approved. If incurred pursuant to the Rey's Agreement, the Debtor is hereby authorized to pay such amount to the Buyer in accordance with the provisions of the Rey's Agreement, including, without limitation, that in the event the Debtor elects to sell the Stalking Horse Assets to a Qualified Bidder other than the Buyer, the Break-Up Fee shall be paid out of the proceeds of the sale to such Qualified Bidder or out of the proceeds of any other sale, transfer or other disposition of the Stalking Horse Assets.

21. With respect to the Stalking Horse Auction, the Debtor reserves the right to seek approval of the Sale of portions of the Stalking Horse Assets through separate purchase agreements with different purchasers in the event that the combination of such Sales is determined by the Debtors, in their sole discretion, to obtain the highest value for the Stalking Horse Assets. Except as otherwise provided in the Rey's Agreement or this Miami Sale Procedures Order, the Debtor further reserves the right as it may reasonably determine to be in the best interests of its estate, in consultation with Prudential and the Committee, to: (i) determine which bidders are Qualified Bidders; (ii) determine which bids are Qualified Bids; (iii) determine which Qualified Bid is the highest and best proposal and which is the next highest and best proposal, (iv) reject any bid that is (a) inadequate or insufficient, (b) not in conformity with

the requirements of the Stalking Horse Sale Procedures or the requirements of the Bankruptcy Code or (c) contrary to the best interests of the Debtors and their estates; (v) remove some or all of the Stalking Horse Assets from the Stalking Horse Auction, (vi) waive terms and conditions set forth herein with respect to all potential bidders, (vii) impose additional terms and conditions with respect to all potential bidders, (viii) extend the deadlines set forth herein, (x) adjourn or cancel the Stalking Horse Auction and/or Sale Hearing in open court without further notice; and (xi) modify the Stalking Horse Sale Procedures as it may determine to be in the best interest of its estate or to withdraw the Motion at any time with or without prejudice.

22. With respect to the Non-Stalking Horse Auction, the Debtor reserves the right to seek approval of the Sale of portions of the Non-Stalking Horse Assets through separate Purchase Agreements with different purchasers in the event that the combination of such Sales is determined by the Debtor, in its sole discretion, to obtain the highest value for the Non-Stalking Horse Assets. The Debtor further reserves the right as it may reasonably determine to be in the best interest of its estate, in consultation with Prudential, to: (i) determine which bidders are Qualified Bidders (ii) determine which bids are Qualified Bids; (iii) determine which Qualified Bid is the highest and best proposal and which is the next highest and best proposal, (iv) reject any bid that is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Non-Stalking Horse Sale Procedures, this Miami Sale Procedures Order or the requirements of the Bankruptcy Code or (c) contrary to the best interests of the Debtors and their estates; (v) remove some or all of the Non-Stalking Horse Assets from the Non-Stalking Horse Auction, (vi) enter into one or more stalking horse agreements and seek Court approval of expense reimbursements and/or break-up fees with respect to the Non-Stalking Horse Assets; (vii) waive terms and conditions set forth herein with respect to all potential bidders, (viii) impose additional

terms and conditions with respect to all potential bidders, (ix) extend the deadlines set forth herein, (x) adjourn or cancel the Miami Non-Stalking Horse Auction and/or Sale Hearing in open court without further notice; and (xi) modify the Miami Non-Stalking Horse Sale Procedures as it may determine to be in the best interest of its estate or to withdraw the Motion at any time with or without prejudice.

23. The stays provided for in Bankruptcy Rules 6004(h) and 6006(d) are hereby waived and this Miami Sale Procedures Order shall be effective immediately upon its entry.

24. This Court shall retain jurisdiction over any matters related to or arising from the implementation of this Order.

Dated: August 6, 2008
Wilmington, Delaware

Christopher S. Sontchi
United States Bankruptcy Judge

DB02:6995253.1

067391.1001